UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

GOLDEN ENTERTAINMENT PA, INC.,

Plaintiff,

v.

SMALL BUSINESS ADMINISTRATION
et al.,

Defendants.

Civil Action No. 22-1731 (JDB)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

BACKGROUND ...................................................................................................................... 1

I.      The Shuttered Venue Operators Grant Program .................................................... 1

II.     The DuBois, Pennsylvania Movie Theater ........................................................... 1

III.    Golden's Grant Application and Procedural History .............................................. 3

LEGAL STANDARD ............................................................................................................ 4

ARGUMENT .......................................................................................................................... 5

I.      SBA Has No Ministerial, Non-Discretionary Duty to Disburse the Amount Specified
        in the Notice of Award, and Golden Has No Clear and Indisputable Right to the Funds .. 5

II.     SBA Did Not Err in Calculating the Amount of Golden's Grant ......................................... 8

III.    Golden is Not Entitled to a Supplemental Grant ............................................................. 11

IV.     Vacatur and Remand Would Be the Proper Remedy for Any Error, Not an Injunction .. 12

CONCLUSION ...................................................................................................................... 15

Pursuant to Federal Rule of Civil Procedure 56, Defendants Small Business Administration ("SBA") and Administrator Isabella Casillas Guzman, by and through the undersigned counsel, respectfully file this combined memorandum of points and authorities in support of their cross-motion for summary judgment and in opposition to Plaintiff Golden Entertainment PA, Inc. ("Golden PA")'s motion for summary judgment.

## BACKGROUND

### I.    The Shuttered Venue Operators Grant Program

The COVID-19 public health emergency forced many, if not most, businesses in the in-person entertainment industry to cease their operations for extended periods of time. *See* 166 Cong. Rec. S7901 (Dec. 21, 2020) (Sen. Cornyn) ("Event venues were the first to close when COVID-19 hit, and they are likely to be the last to open once it is gone."). To "help [these businesses] stay afloat" until they could resume their normal operations, *id.*, Congress established the Shuttered Venue Operators Grant Program ("the Program"). *See* Economic Aid to Hard-Hit Small Business, Nonprofits, and Venues Act, § 324, 134 Stat. 1182, 2022 (2020) (Div. N, Tit. III, Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, codified at 15 U.S.C. § 9009a). Under this relief Program, an eligible entity could apply for grants of up to $10 million upon certifying "that the uncertainty of current economic conditions ma[de] necessary the grant to support [its] ongoing operations." 15 U.S.C. § 9009a(b)(1)(B), (c)(1)(A)(ii), (c)(3).

### II.    The DuBois, Pennsylvania Movie Theater

The DuBois Twin Cinema, in DuBois, Pennsylvania, opened its doors to the movie-going public on April 6, 1977. *See* Dave Bonan, *Golden Ticket Cinemas Dubois 5*, Cinema Treasures, https://cinematreasures.org/theaters/18163 (last visited Sept. 25, 2023). One of the first movies the new theater screened was *The Deep* (Columbia Pictures 1977), about two treasure-hunting divers who confront criminals after discovering secret cargo in a World War II-era shipwreck. *See* Gene

M. Aravich, *Opera Houses & Theaters in DuBois*, DuBois Area Hist. Soc'y, Inc., http://duboishs .com/index.php/dubois-theaters/ (last visited Sept. 25, 2023); *The Deep*, Internet Movie Database, https://www.imdb.com/title/tt0075925/ (last visited Sept. 25, 2023). Over the decades, the theater has expanded, taking over several connecting mall stores. *See* Aravich, *supra*. The theater also has gone through a number of changes in its operation. *See* Bonan, *supra*. In December 1993, Carmike Cinemas acquired the theater and renamed it Carmike Cinema V. *See id.* Then, in March 2017, American Multi-Cinema, Inc.—aka, AMC Theaters—acquired the theater. *See id.*

Golden Entertainment MN, Inc. ("Golden MN") took over the theater from AMC Theaters in 2019. Ex. A, Bloemeke Decl. ¶ 3. After a "temporary" 19-day pause, the theater reopened to the public in October 2019, with "only some slight cosmetic changes." Elaine Haskins, *Golden Ticket Cinemas to Bring Luxury Movie Experience to DuBois*, Courier Expr. (Sept. 18, 2019), https:// www.thecourierexpress.com/news/golden-ticket-cinemas-to-bring-luxury-movie-experience-to-dubois/article_e4ccd113-c7da-5e5b-9691-25f7721bb434.html; *see also* Bloemeke Decl. ¶¶ 3-4. Although Golden MN had plans to renovate the theater eventually, it retained many aspects of the theater's familiar character. It pledged, for example, that "[t]he existing and well loved popcorn bucket will continue as Golden Ticket Cinemas will fill guests' previously purchased AMC 2019 buckets for only $4." Haskins, *supra*. In addition, "the former theater's longtime general manager" was "officially the general manager of the local theater under the new ownership." *Id.* As a local journalist informed her readers, "the theater will look the same right now." Allison Gens, *Movie Theater to Reopen in DuBois With New Owners*, WTAJ (Oct. 3, 2019), https://www.wtaj.com /news/local-news/movie-theater-to-reopen-in-dubois-with-new-owners/. Golden MN operated the theater through April 20, 2021, when it transferred the theater's ownership to Golden PA, a new entity incorporated earlier that same day. Bloemeke Decl. ¶¶ 6-7.

On April 26, 2021, Golden PA applied for a Program grant in the amount of $623,443.42. Am. Compl. ¶ 21, ECF No. 17. On August 27, 2021, SBA denied Golden PA's application. *Id.* ¶ 23. In September 2021, Golden PA submitted an administrative appeal, which SBA denied on November 19, 2021. *Id.* ¶¶ 24, 26.[1] Golden PA filed this action on June 16, 2022, challenging the denial of its grant application. *See generally* Compl., ECF No. 1. On December 7, 2022, SBA vacated its denial of Golden PA's application and issued a Notice of Award for a grant of $140,285.57. Am. Compl. ¶ 28.

On December 22, 2022, Congress rescinded all remaining unobligated Program funds. *See* Fairness for 9/11 Families Act, § 101(d)(2), 136 Stat. 4459, 6110 (2022) (Div. MM, Consolidated Appropriations Act, 2023, Pub. L. No. 117-328); Richards Decl. ¶ 10, ECF No. 22-1. On February 16, 2023, Golden PA amended its complaint to challenge the SBA's "failure to disburse funds" in the awarded amount of $140,285.57 and "denial of the full amount of [its] SVOG award request"— i.e., the additional $483,157.85 Golden PA sought but was not awarded—as arbitrary and capricious, contrary to law, and unsupported by substantial evidence. Am. Compl. ¶¶ 43-51.[2] Golden PA framed its claims as in the nature of mandamus. *See id.*

---

[1]    SBA initially denied Golden PA's grant application, and that of Golden Entertainment SD, Inc. ("Golden SD"), because it had already counted their 2019 revenues in calculating grants for three affiliated corporate entities—Golden MN, Golden Entertainment NE, Inc. ("Golden NE"), and Golden Ticket Cinemas, Inc. ("Golden Ticket"). *See Shuttered Venue Operators Grantees*, SBA, https://data.sba.gov/dataset/svog (last visited Sept. 25, 2023). During a reconsideration process, SBA recalculated those three entities' grant awards in a manner that excluded Golden PA and Golden SD's 2019 revenues. Because SBA no longer was counting Golden PA and Golden SD's 2019 revenues in calculating the affiliated entities' grant awards, for the first time it could award Golden PA and Golden SD grants based on their 2019 revenues, and promptly did so.

[2]    In seeking to compel funding of the $140,285.57 Notice, Golden raises both a claim under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and a mandamus claim under 28 U.S.C. § 1361. Am. Compl. ¶¶ 38-51. Defendants address these claims together, as they are

On April 10, 2023, Defendants moved to stay this case pending a decision in *Concert Investor, LLC v. SBA*, No. 22-5253 (D.C. Cir.), which presented the issue of whether Congress's rescission of funds rendered moot an action challenging a grant application's denial. *See* Defs.' Mot. Stay, ECF No. 28. Golden PA did not oppose a stay. *See* Pl.'s Resp., ECF No. 29. On May 10, 2023, this Court stayed the case pending a decision in *Concert Investor*. Min. Order (May 10, 2023). After SBA recovered certain grant funds it previously had disbursed to other entities, Defendants withdrew their argument that the case is moot, Notice, ECF No. 32, and this Court lifted the stay, Min. Order (Aug. 11, 2023).

## LEGAL STANDARD

Summary judgment is merited "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In an action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, a court "review[s] the administrative record to determine whether the agency's decision was arbitrary and capricious, and whether its findings were based on substantial evidence." *New LifeCare Hosps. of N.C., LLC v. Becerra*, 7 F.4th 1215, 1222 (D.C. Cir. 2021). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). An agency clears this hurdle so long as it "examine[s] the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Id.* (quotation marks omitted). The substantial evidence standard, meanwhile, "requires

---

functionally identical. *See Kangarloo v. Pompeo*, Civ. A. No. 20-0354 (CJN), 2020 WL 4569341, at *7 (D.D.C. Aug. 7, 2020) ("Because Plaintiffs' APA claim fails, mandamus is not available.").

4

more than a scintilla, but can be satisfied by something less than a preponderance of the evidence." *Epsilon Elecs., Inc. v. Dep't of Treasury*, 857 F.3d 913, 925 (D.C. Cir. 2017) (cleaned up).

**ARGUMENT**

Golden PA is not entitled to the amount specified in the Notice of Award, because SBA has no ministerial, non-discretionary duty to disburse it such funds. SBA properly calculated the amount of Golden PA's award based on the information that Golden PA submitted. While Golden PA argues that SBA should have calculated its award using a formula that applies to entities that began operations after January 1, 2019, Golden PA is deemed to have been in operation on that date as Golden MN stepped into the shoes of AMC Theaters, which was operating the theater as of that date. Golden PA's demand for a supplemental grant, meanwhile, is borderline frivolous, as Golden PA did not apply for any such grant, does not even attempt to show that it is eligible for such a grant, cannot be entitled to such a grant, and errs in calculating the amount that it would receive. For all these reasons, this Court should grant Defendants' cross-motion for summary judgment and deny Golden PA's motion for summary judgment. And should this Court conclude that SBA erred, it should vacate the Notice of Award and remand the matter to SBA to determine in the first instance how best to rectify the inconsistency that such a ruling would inject into SBA's determination of Golden PA's eligibility for a grant—specifically, to decide whether its determination that Golden PA stepped into Golden MN's shoes can stand in light of a ruling that Golden MN did not step into AMC Theaters' shoes.

**I.      SBA Has No Ministerial, Non-Discretionary Duty to Disburse the Amount Specified in the Notice of Award, and Golden PA Has No Clear, Indisputable Right to the Funds**

The APA empowers a court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 701(1). "Section 706(1) permits judicial review of agency inaction, but only within strict limits. Courts can compel an agency to take a discrete agency action that it is required

to take." *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (cleaned up). Relief under Section 706(1) thus is available "only if a federal agency has a ministerial or non-discretionary duty amounting to a specific, unequivocal command." *Id.* (quotation marks omitted). "This standard reflects the common law writ of mandamus, which the APA carried forward." *Id.* (quotation marks omitted); *see also Vietnam Veterans of Am. v. Shineski*, 599 F.3d 654, 659 n.6 (D.C. Cir. 2010) ("the standards for obtaining relief" via writ of mandamus and APA are "essentially the same"). "To show entitlement to mandamus," a plaintiff must establish, among other things, "a clear and indisputable right to relief" and "that the government agency or official is violating a clear duty to act." *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016). "[I]f there is no clear duty to act," courts "cannot mandate that an agency take any particular steps." *Zandieh v. Pompeo*, Civ. A. No. 20-0919 (JEB), 2020 WL 4346915, at *7 (D.D.C. July 29, 2020).

SBA has no ministerial, non-discretionary duty to disburse Golden PA the amount specified in the Notice of Award, and Golden PA has no clear and indisputable right to such funds. While Golden PA argues that the Notice of Award imposes such a duty, nothing in the Notice of Award's language purports to impose any sort of duty on SBA, much less one that is unequivocal and ministerial. *Cf. D&N Bank v. United States*, 331 F.3d 1374, 1378-79 (Fed. Cir. 2003) ("obligations" on agency do not arise from "[a]n agency's performance of its regulatory or sovereign functions"). To the contrary, the Notice of Award itself explains that its purpose is far more modest—merely "to notify grant recipients of award reporting and record keeping requirements." Ex. B, Notice of Award. Notably, the box for an agency official's signature was never signed, undermining the idea that the Notice of Award imposes obligations on SBA. *Id.* (box 21); *see also Elec. Privacy Info. Ctr. v. IRS*, 910 F.3d 1232, 1245 (D.C. Cir. 2018) ("A non-binding document cannot impose on an agency an enforceable duty to act."); *cf. Miller v. Holzmann*, 471 F.

6

Supp. 2d 122, 124 (D.D.C. 2007) ("the parties contemplated that their ultimate agreement would be . . . signed"). Nor does anything in 15 U.S.C. § 9009a, the statute that creates the Program, suggest that a Notice of Award has the effect of imposing any sort of duty on SBA, or a clear right to relief in an entity like Golden PA.

Unsurprisingly, the only court to address the issue concluded that a Notice of Award issued under the Program imposes no obligation on SBA. In *Imaginarium, LLC v. United States*, 166 Fed. Cl. 234, 244 (2023), the Court of Federal Claims held that a Notice of Award identical in relevant respects to the one at issue here "does not establish mutual obligations owed by each party, nor does it contain any other indications of intent to bind the United States." Rather, the court reasoned, a "Notice of Award is just that: an informational notice . . . akin to a regulatory approval document" setting out "the Project Period, Budget Period, and Award Amount, among other information." *Id.* Although *Imaginarium* framed the issue as whether the Notice of Award evinced an "intent to bind the United States to contract," given that the plaintiff there had raised a breach of contract claim, *id.*, its analysis applies with equal force to the question of whether such a Notice of Award imposes on SBA a ministerial, non-discretionary duty that can support relief in the nature of mandamus.[3]

Golden PA, for its part, does not attempt to explain why the Notice of Award ostensibly creates a ministerial, non-discretionary duty to disburse funds. As best Defendants can discern, Golden PA's argument is that SBA must do what it said that it would do, but it cites no authority and offers no reasoning to support this notion. *Cf. Cogar v. Schuyler*, 464 F.2d 747, 755 n.21 (D.C. Cir. 1972) ("The courts cannot require an administrative agency to do that which is merely patently

---

[3]     Golden's apparent litigating position that Golden MN does not stand in AMC Theaters' shoes, for purposes of determining whether Golden was in operation on January 1, 2019, further undermines the idea that SBA has a ministerial and non-discretionary duty to disburse funds. As explained in further detail *infra* § IV, a ruling in Golden's favor on that issue would undermine SBA's conclusion that Golden stands in Golden MN's shoes, and thus, is eligible for a grant at all.

desirable."); *Li v. Kerry*, 710 F.3d 995, 1004 (9th Cir. 2013) ("We have no authority to compel agency action merely because the agency is not doing something we may think it should do."). And in any event, SBA has a sound reason to wait before disbursing Golden PA funds. Although SBA has approximately $23 million available to fund Program grants, *see* Rule 28(j) Ltr. at 1, ECF No. 25-1, numerous lawsuits arising under the Program remain pending in this District and others, and Defendants' total liabilities in these cases may well exceed the total balance of available Program funds. Waiting for all such litigation to conclude before disbursing any additional Program funds will allow SBA to apportion on an equitable basis limited grant funds between all those entities ultimately determined, to be eligible for and entitled to a Program grant.

## II.    SBA Did Not Err in Calculating the Amount of Golden PA's Grant

An entity is eligible for a Program grant only if it "was fully operational . . . on February 29, 2020." 15 U.S.C. § 9009a(a)(1)(A)(i)(I). If a new owner acquires an otherwise-eligible entity, "SBA will consider the new owner of an eligible entity to have stepped into the shoes of the prior owner for purposes of qualifying for the [grant] program." *Shuttered Venue Operators Grants: Frequently Asked Questions* ("*FAQs*") 14 (Oct. 20, 2021), https://www.sba.gov/sites/default/files/2021-10/10-20-21%20SVOG%20FAQ%20FINAL_508_final.pdf (Question 84). "In the event of such a transfer, SBA will permit the new owner to use the prior owner's revenues as its own if the transferred entity was operational on February 29, 2020, regardless of the date of the sale." *Id.*

The formula for calculating an eligible entity's Program grant depends on whether the entity was in operation on January 1, 2019. 15 U.S.C. § 9009a(c)(1)(A)(i). An entity that was in operation on that day receives a grant equal to 45% of its gross earned revenue during 2019. *Id.* § 9009a(c)(1)(A)(i)(I). An entity that began operations after that day, meanwhile, receives a grant equal to six times its "average monthly gross earned revenue for each full month during which [it] was in operation during 2019." *Id.* § 9009a(c)(1)(A)(i)(II). Thus, for example, if an entity began

8

operations in mid-October 2019 and had $50,000 in gross earned revenue during November 2019 (its first full month of operation) and $150,000 in gross earned revenue during December 2019, it would receive a grant of $600,000, six times the average of those two monthly amounts.

SBA properly calculated the amount of Golden PA's grant based on the materials that Golden PA submitted. While Golden PA was incorporated on April 20, 2021, Golden MN had operated the theater before that since October 4, 2019, and AMC Theaters in turn had operated the theater before that since March 2017. *See* Bloemeke Decl. ¶¶ 3-6; Am. Compl. ¶ 13; Bonan, *supra*. In applying for a grant, Golden PA submitted its revenue information only for October, November, and December 2019, without submitting any revenue information at all for January through September 2019. *See* Am. Compl. ¶ 6.[4] SBA thus properly awarded Golden PA a grant in the amount of 45% of the only revenue it demonstrated it earned during 2019, as the statute required. *See* 15 U.S.C. § 9009a(c)(1)(A)(i)(I).

SBA did not err in declining to calculate a grant as if Golden PA began to operate on October 1, 2019. Just as Golden PA, which was not incorporated until April 20, 2021, stands in Golden MN's shoes, so too does Golden MN stand in the shoes of AMC Theaters, which operated the theater as of January 1, 2019. *See FAQs*, *supra*, at 14; Bloemeke Decl. ¶ 3; Bonan, *supra*. In both cases, the new operator carried on the theater's essential business activity—screening movies—with only a temporary period of public closure for renovations and other transitional activities. In both cases, the new operator did not acquire the corporate entity that previously had

---

[4]     During the grant-making process, SBA repeatedly asked Golden for revenue information for the earlier months in 2019. Golden claimed to lack this information, and purported to be unable to obtain the information from AMC Theaters—even though Golden MN, Golden NE, and Golden Ticket all had obtained and provided revenue information from their theaters' prior operators. SBA calculated Golden's grant only after repeated efforts to obtain revenue information for all of 2019, and Golden's repeated assertions that it could not provide such information. Had Golden submitted revenue information for the full year, SBA would have counted it in calculating Golden's grant.

operated the theater, nor was there any transfer of title to the premises, which both the old and new operators leased from a third-party landlord. Bloemeke Decl. ¶¶ 3, 6. Rather, the new operator took over the theater's operation, acquired the old operator's fixtures and other business assets, and retained the theater's key staff and many familiar aspects of its character. *See supra* p. 2; Haskins, *supra* (the theater had "only some slight cosmetic changes"); Gens, *supra* ("the theater will look the same right now").

There is no principled reason why Golden PA would stand Golden MN's shoes—as it must to be eligible for any grant in the first place—but Golden MN would not stand in AMC Theaters' shoes. SBA certainly did not err in declining to adopt such an inconsistent approach. *See Rapoport v. SEC*, 682 F.3d 98, 104 (D.C. Cir. 2012) ("agencies must apply their rules consistently"); *Helton v. NLRB*, 656 F.2d 883, 891 (D.C. Cir. 1981) ("agencies have an obligation to be consistent in their adjudicative decisions"). "Under the [APA] as elsewhere, what is good for the goose is good for the gander." *Mozilla Corp. v. FCC*, 940 F.3d 1, 62 (D.C. Cir. 2019). And even assuming, for the sake of argument, that SBA reasonably could have concluded that Golden MN did not step into AMC Theaters' shoes, that does not mean that SBA was required to do so, or render its conclusion to the contrary unreasonable. *See Motor Vehicle Mfrs.*, 463 U.S. at 43 ("a court is not to substitute its judgment for that of the agency"); *Siegel v. SEC*, 592 F.3d 147, 155 (D.C. Cir. 2010) ("The reviewing court may not substitute its own judgment for the agency's choice between two fairly conflicting views, even if that court would justifiably have made a different choice had the matter been before it de novo." (quotation marks omitted)); *see also Blue Ridge Env't Def. League v. Nuclear Regul. Comm'n*, 716 F.3d 183, 13 (D.C. Cir. 2013) ("We are obligated to defer to the wisdom of the agency, provided its decision is reasoned and rational." (quotation marks omitted)).

Because Golden PA properly is deemed to have been in operation on January 1, 2019, SBA correctly calculated its award as equal to 45% of the gross earned revenue during 2019 it showed.

The temporary pause in the theater's operations that occurred when Golden MN acquired it from AMC Theaters does not alter this analysis. Under SBA's guidance, an entity's new owner steps into the old owner's shoes, period—there is no requirement of continuous and uninterrupted operations when a new owner acquires an entity. *See FAQs*, *supra*, at 14. Indeed, to superimpose such a requirement onto the Program would undermine if not negate the very policy of deeming an entity's new owner to step into the prior owner's shoes, given that businesses frequently cease operations at least temporarily when new owners acquire them, for renovations and other purposes.

## III.   <u>Golden PA is Not Entitled to a Supplemental Grant</u>

Golden PA's demand for a $311,721.71 supplemental grant is frivolous, as it did not apply for such a grant. *See Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir. 2001) ("An agency cannot be faulted for failing to address such issues that were not raised by petitioners"); *Hensley v. United States*, 292 F. Supp. 3d 399, 409 (D.D.C. 2018) (a "decision cannot be deemed arbitrary and capricious for failing to address arguments that [were] never made"); *Charlton v. Donley*, 846 F. Supp. 2d 76, 84 (D.D.C. 2012) ("an agency is not required to address arguments that have not been asserted by the parties."); *see also Dep't of Treasury v. Fed. Lab. Rels. Auth.*, 707 F.2d 574, 582 n.25 (D.C. Cir. 1983) ("An administrative decision need not fail the test of reasonableness solely because [agency] did not consider an argument later suggested"). Even now, Golden PA does not even try to demonstrate eligibility for a supplemental grant. An entity was eligible for such a grant "if, as of April 1, 2021, [its] revenues . . . for the most recent calendar quarter [were] not more than 30 percent of [its] revenues . . . for the corresponding calendar quarter during 2019 due to the COVID-19 pandemic." 15 U.S.C. § 9009a(b)(3)(A). Golden PA does not explain how, let alone prove that, it satisfies this condition. Litigation is not a wishing well, and

Golden PA is not entitled to draw from the public fisc whatever sum, untethered to law or fact, it tosses into its prayer for relief.

Even were Golden PA eligible for a supplemental grant, it cannot be entitled to one. Congress entrusted to SBA's judgment, not the judiciary's, whether an entity should receive a supplemental grant. Congress drafted the Program statute using the permissive term "may," providing that SBA "may make a supplemental grant," not that it must do so. 15 U.S.C. § 9009a(b)(3)(A); *see also Biden v. Texas*, 142 S. Ct. 2528, 2541 (2022) ("'may' does not just suggest discretion, it clearly connotes it" (cleaned up)); *Perry Capital LLC v. Mnuchin*, 864 F.3d 591, 607 (D.C. Cir. 2017) ("'may' is, of course, permissive rather than obligatory" (quotation marks omitted)). Underscoring the discretionary nature of SBA's authority to award supplemental grants is the fact that a separate provision of the Program statute requires that any grant "*shall* be in [a certain] amount." 15 U.S.C. § 9009a(c)(1)(A), (2) (emphasis added). The Program statute's use of the mandatory term "shall" in specifying the formula that SBA must use to calculate the amount of any grant that it awards stands in sharp contrast to its use of the permissive term "may" to characterize SBA's authority to issue—or not issue—such a grant at all. *See Perry Capital*, 864 F.3d at 607 ("When a statute uses both 'may' and 'shall,' the normal inference is that each is used in its usual sense—the one act being permissive, the other mandatory." (cleaned up)).

Lastly, even if Golden PA somehow were entitled to a supplemental award, it miscalculates the amount it would receive. Golden PA uses the award calculation formula that applies to entities that began operating after January 1, 2019, rather than the formula that applies to entities that already were in operation on that day, which, as explained, applies here. *See supra* § II.

IV.     **<u>Vacatur and Remand Would Be the Proper Remedy for Any Error, Not an Injunction</u>**

"[U]nder settled principles of administrative law, when a court reviewing agency action determines that an agency made an error of law, the court's inquiry is at an end: the case must be

remanded to the agency for further action consistent with the corrected legal standards." *N.C. Fisheries Ass'n v. Gutierrez*, 550 F.3d 16, 20 (D.C. Cir. 2008). "[R]emand to the agency for further proceedings" thus is what a court "normally does when it identifies an agency error." *Id.* Remand is particularly appropriate "when an agency committing an error of law has discretion to determine in the first instance how it should be rectified." *Global Van Lines, Inc. v. ICC*, 804 F.2d 1293, 1305 n.95 (D.C. Cir. 1986). A "court err[s] by directing [an agency] how to [act] . . . rather than just remanding after identifying the error." *Allina Health Servs. v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014). "Only in rare cases, when the reviewing court is convinced that remand would serve no purpose, does the court direct the agency how to resolve a problem." *Id.* at 1111 n.6.

Assuming that Defendants committed any error as to Golden PA's grant application, Golden PA fails to show that this is one of the "rare cases," *Allina*, 746 F.3d at 1111, where an injunction rather than vacatur and remand is appropriate. For one thing, as explained above, Golden PA is not entitled to a grant at all, as the decision to award a grant falls within SBA's discretion. *See supra* § III. Moreover, also as explained above, Golden PA is eligible for a grant in the first place only because SBA deemed it to stand in Golden MN's shoes. *See supra* § II. Should this Court conclude that SBA erred in deeming Golden MN to stand in AMC Theaters' shoes, SBA must reconsider its choice to deem Golden PA to stand in Golden MN's shoes, too, given these two determinations' common analytic foundations, to ensure the consistency and integrity of its programmatic decision-making and administration. *See Rapoport*, 682 F.3d at 104; *Helton*, 656 F.2d at 891. Whether or not SBA's determination that Golden PA stands in Golden MN's shoes— and thus, SBA's conclusion that Golden PA is eligible for any grant at all—could stand in light of a ruling by this Court that Golden MN does not stand in AMC Theaters' shoes is precisely the sort

of question that SBA, not this Court, should "determine in the first instance." *Global Van Lines*, 804 F.2d at 1305 n.95.[5]

Finally, Golden PA fails to satisfy the remaining factors for injunctive relief. It cannot show irreparable harm because it was not entitled to a grant at all. *See Afghan Yar Int'l Constr. Co. Ltd. v. Dep't of State*, Civ. A. No. 21-1740 (CKK), 2021 WL 3472275, at *15 (D.D.C. Aug. 6, 2021) (a party cannot rely on "unestablished" rights "to demonstrate irreparable harm"); *Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 319 (D.D.C. 2017) ("Plaintiff is not presently entitled to the [relief] that it seeks, and accordingly, Plaintiff cannot show that it has suffered an irreparable [ ] injury"); *Nat'l Conf. on Ministry to Armed Forces v. James*, 278 F. Supp. 2d 37, 52 (D.D.C. 2003) (no irreparable harm where "although plaintiff quite possibly will suffer some harm by the denial of its application . . . this harm . . . is not based on the denial of a right to which plaintiff was entitled"). And because Golden PA neither succeeds on the merits nor will suffer irreparable harm without an injunction, the balance of equities and public interest disfavor an injunction as well. *See Zukerman v. Postal Serv.*, 64 F.4th 1354, 1364 (D.C. Cir. 2023) ("When the defendant is the government, factors (3) and (4) merge."); *FTC v. Staples, Inc.,* 190 F. Supp. 3d 100, 116 (D.D.C. 2016) ("if [plaintiff] is unable to demonstrate a likelihood of success on the merits, the equities alone cannot justify an injunction").

\*    \*    \*

---

[5] Additionally, although beyond this litigation's scope, SBA calculated the grants awarded to Golden MN, Golden NE, and Golden Ticket based on its assumption that each of these entities stands in the shoes of their prior theater operators. Should this Court conclude that Golden MN does not stand in AMC Theaters' shoes, SBA would need to recalculate each of those three entities' grants and, if necessary, recoup any excess funds that it may have awarded these entities.

**CONCLUSION**

This Court should grant Defendants summary judgment and deny Golden PA's motion for summary judgment.

Dated: September 25, 2023

Respectfully submitted,

MATTHEW M. GRAVES
D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Chief, Civil Division

By: */s/ Bradley G. Silverman*
BRADLEY G. SILVERMAN
D.C. Bar #1531664
Assistant United States Attorney
601 D Street NW
Washington, DC 20530
(202) 252-2575
bradley.silverman@usdoj.gov

*Attorneys for the United States of America*